# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 52069-2024

RIDGELINE MEDICAL, LLC, an Idaho
limited liability company,

    Plaintiff-Appellant,

v.

DAVID LYON,

    Defendant-Respondent,

and

STATE OF IDAHO,

    Intervenor-Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**Pocatello, October 2025 Term**

**Opinion filed: January 9, 2026**

**Melanie Gagnepain, Clerk**

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Bonneville County. Bruce L. Pickett, District Judge. Jason D. Walker, Magistrate Judge.

The intermediate appellate decision of the district court is <u>affirmed</u>.

Smith, Driscoll & Associates, PLLC, Idaho Falls, for Appellant. Bryan D. Smith argued.

Runft Dindinger Kohler, PLLC, Boise, for Respondent. Edward W. Dindinger argued.

Raúl R. Labrador, Attorney General, Boise, for Intervenor. Michael A. Zarian argued.

Melaleuca, Inc., Idaho Falls; and Riverbend Management, Idaho Falls, for Amicus Curiae Melaleuca, Inc.

---

ZAHN, Justice.

This case concerns a constitutional challenge to the Idaho Patient Act, Idaho Code sections 48-301 through 48-312 (2020) ("IPA" or "Act"). Ridgeline Medical, LLC, appeals from the district

court's decision on intermediate appeal, affirming the magistrate court's decision granting summary judgment to David Lyon and dismissing Ridgeline's complaint. Ridgeline brought a collection action against Lyon to recover the amount due for medical services that Ridgeline provided to Lyon. Lyon counterclaimed that Ridgeline's lawsuit violated the IPA because Lyon did not receive a final statement from Ridgeline before it filed suit; therefore, Ridgeline was liable to Lyon for statutory penalties. Ridgeline moved for summary judgment, arguing that Lyon had breached an implied-in-fact contract and that certain provisions of the IPA violated the First, Eighth, and Fourteenth Amendments of the United States Constitution. Lyon also moved for summary judgment, arguing that he should be awarded statutory damages against Ridgeline because it violated the IPA.

The magistrate court initially granted Ridgeline's motion in part, concluding that certain provisions of the IPA were unconstitutional and then severing those provisions from the rest of the Act. However, the court denied Ridgeline's motion on its contract claim after concluding that Ridgeline failed to comply with the remaining provisions of the Act. The magistrate court granted Lyon's motion to dismiss the contract claim due to Ridgeline's noncompliance but denied Lyon's request for statutory penalties because it concluded that provision violated the Eighth Amendment as applied to Ridgeline.

Following this decision, the Idaho Attorney General filed a motion to intervene on behalf of the State of Idaho. The magistrate court granted the motion. After receiving supplemental briefing and hearing additional argument on the constitutional issues, the magistrate court vacated its prior decision and issued an amended decision concluding that the IPA was constitutional.

Ridgeline appealed the decision to the district court, which affirmed the magistrate court's decision. Ridgeline now appeals the district court's decision to this Court and reasserts its constitutional challenges to the IPA. For the reasons discussed below, we affirm the district court's intermediate appellate decision and hold that the disputed IPA provisions survive Ridgeline's constitutional challenges.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Ridgeline provided medical treatment to Lyon, for which it charged $777. Ridgeline sent a final statement to Lyon at the address he provided when he received medical treatment, seeking payment for the services it provided. Lyon never received the statement and did not pay Ridgeline. Ridgeline hired the law firm of Smith, Driscoll, and Associates ("SDA") to collect the debt from

Lyon. SDA sent two demand letters to Lyon at the same address Lyon had provided to Ridgeline, giving Lyon ten days to pay. Lyon never received the letters and never made payment. SDA then filed a lawsuit against Lyon, alleging breach of an implied-in-fact contract. SDA also reported adverse information about Lyon's unpaid debt to a consumer reporting agency.

Lyon answered the complaint and argued that Ridgeline's claims were barred by provisions of the IPA. Lyon also filed a counterclaim and asserted a claim for statutory penalties under the IPA, arguing that Ridgeline failed to comply with the IPA before filing suit.

Several months later, Ridgeline moved for summary judgment. It argued that Lyon was liable for $777 under an implied-in-fact contract and that certain provisions of the IPA were unconstitutional. Specifically, Ridgeline argued that certain provisions of the IPA violated: (1) the First Amendment right to petition; (2) the First Amendment right to freedom of speech; (3) the Fourteenth Amendment rights to equal protection and due process; and (4) the Eighth Amendment's prohibition against excessive fines. Finally, Ridgeline argued that the unconstitutional provisions of the IPA could not be severed from the rest of the Act and therefore, the entire Act must be invalidated.

Lyon did not file a response to Ridgeline's summary judgment motion. Instead, over two months later, Lyon filed his own motion for summary judgment, arguing that Ridgeline's claims were barred because it failed to comply with the IPA's requirements before filing its lawsuit. Lyon also asserted that Ridgeline's failure to comply with the IPA entitled Lyon to an award of statutory penalties under the Act. Lyon inexplicably failed to address Ridgeline's constitutional arguments, which were the primary focus of Ridgeline's motion.

The magistrate court heard oral argument on the cross-motions for summary judgment and later issued a written decision invalidating Idaho Code section 48-303(3)(b) (2020) and section 48-304(2) (2020). The court concluded that section 48-303(3)(b) (2020) unconstitutionally infringed upon the First Amendment right to freedom of speech and section 48-304(2) (2020) unconstitutionally infringed upon the First Amendment right to petition. The magistrate court also determined that the statutory penalties contained in section 48-311(2) (2020) violated the Eighth Amendment as applied to Ridgeline. As a result, the magistrate court denied Lyon's counterclaim seeking statutory penalties under the IPA. However, the court determined that the unconstitutional provisions of the IPA could be severed from the rest of the Act and determined that Ridgeline

3

failed to comply with the remaining provisions of the IPA. As a result, the court dismissed Ridgeline's complaint without prejudice and granted Lyon's motion in part and denied it in part.

Following this decision, but prior to entry of final judgment, the Idaho Attorney General filed a motion, pursuant to Idaho Code section 10-1211, to intervene on behalf of the State of Idaho to defend the constitutionality of the IPA. Ridgeline and Lyon opposed the State's intervention. The magistrate court granted the motion to intervene and ordered supplemental briefing on the constitutional issues. The State argued that the IPA was constitutional. Lyon also submitted a brief arguing that the IPA was constitutional. Ridgeline maintained that it was unconstitutional, although it changed its argument on the statutory penalties and argued they violated the Substantive Due Process Clause rather than the Eighth Amendment.

After considering the supplemental briefing and hearing oral argument, the magistrate court vacated its prior decision and issued an amended decision, which concluded that the IPA was constitutional. It again concluded that Ridgeline had failed to comply with the IPA before filing suit and again dismissed Ridgeline's complaint without prejudice. The court also awarded Lyon statutory penalties against Ridgeline under the IPA.

Following the magistrate court's amended decision, Ridgeline filed a notice of appeal with the district court. On intermediate appeal, Ridgeline reasserted its constitutional arguments. The district court issued a written decision affirming the magistrate court's amended decision. Ridgeline timely appealed. For the reasons discussed below, we affirm the district court.

## II.    ISSUES ON APPEAL

1. Whether the challenged provisions of the IPA violate the First Amendment right to freedom of speech.
2. Whether the challenged provisions of the IPA violate the First Amendment right to petition.
3. Whether the challenged provisions of the IPA violate a purported First Amendment right to pre-petitioning activity.
4. Whether the challenged provisions of the IPA violate the Fourteenth Amendment's Equal Protection Clause.
5. Whether the challenged provisions of the IPA violate the Fourteenth Amendment's Procedural Due Process Clause.
6. Whether the challenged provisions of the IPA violate the Fourteenth Amendment's Substantive Due Process Clause.
7. Whether Ridgeline or Lyon are entitled to attorney fees on appeal.

### III. STANDARD OF REVIEW

On appeal to this Court from an intermediate appeal in the district court, we review the magistrate court's decision, independently of, but with due regard to, the district court's decision. *Doe I v. Doe (2024-23)* (*In re Doe II*), ___ Idaho ___, ___, 566 P.3d 409, 418–19 (2025) (citation omitted). We exercise free review of legal issues, including decisions concerning the constitutionality of a statute. *Gomersall v. St. Luke's Reg'l Med. Ctr., Ltd.*, 168 Idaho 308, 313, 483 P.3d 365, 370 (2021).

### IV. ANALYSIS

This appeal challenges the constitutionality of certain provisions of the IPA, specifically Idaho Code sections 48-303(3)(a) through (c), 48-304, and 48-311 (2020). The IPA was enacted in 2020. *See* Act of Mar. 16, 2020, ch. 139, 2020 Idaho Sess. Laws 426–30. It is intended to "govern the fair collection of debts owed to health care providers." I.C. § 48-302 (2020). It requires that healthcare creditors take certain actions before they engage in an "extraordinary collection action," which is defined to include: (1) reporting adverse patient information to consumer reporting agencies; (2) pursuing judicial or legal action against the patient; or (3) selling, transferring, or assigning the debt to a third party to collect the debt in a name besides that of the healthcare creditor. I.C. §§ 48-303(3)(a)–(c), 48-304 (2020).

At the time Ridgeline filed its lawsuit against Lyon, the IPA required Ridgeline to ensure the following occurred prior to taking an extraordinary collection action:

- Ridgeline must bill any applicable third-party payor (such as an insurer) within forty-five days of the date of service. I.C. § 48-304(1) (2020).

- Lyon must receive a consolidated summary of services ("CSS")[1] from any applicable healthcare facility ("HCF") within sixty days of service, except in limited circumstances. I.C. §48-304(2) (2020). Here, Ridgeline contends it was not required to send a CSS because Ridgeline provided all goods and services at Ridgeline. *See* I.C. § 48-309 (2020).

- Lyon must receive a final billing statement. I.C. § 48-304(3) (2020). A patient is presumed to have received the final statement or CSS three days after it is sent. I.C. § 48-308 (2020).

---

[1] The CSS differs from a final statement in that it includes a description of the goods and services provided and the names and contact information of each billing entity that corresponds with any healthcare providers ("HCP") who provided those goods or services. *Compare* I.C. § 48-303(1) (2020), *with* I.C. § 48-303(4) (2020).

- No interest, fees, or other charges may accrue until sixty days after Lyon received the final billing statement. I.C. § 48-304(4) (2020).

- Ninety days must pass after Lyon receives the final billing statement and "all internal reviews, good faith disputes, and appeals of any charges or third-party payor obligations or payments" have been resolved. I.C. § 48-304(5) (2020).

Failure to comply with any of these requirements would bar Ridgeline from recovering its costs and attorney fees and would subject it to statutory penalties. *See* I.C. §§ 48-305(1), 48-311 (2020). Noncompliance may also subject Ridgeline's complaint to dismissal without prejudice, depending on which of the five prerequisites were not satisfied. I.C. § 48-306 (2020). However, Ridgeline could refile its lawsuit if it ensured compliance within specified timeframes. *Id.* The IPA does not prevent a healthcare creditor from collecting a debt by means other than an extraordinary collection action. I.C. § 48-312 (2020); *see* I.C. § 48-303(3) (2020).

With this context in mind, we turn to Ridgeline's arguments. At the outset, we note that the constitutional claims Ridgeline has raised are solely overbreadth and facial challenges to specific provisions of the IPA. It has not expressly asserted an as-applied challenge on appeal, nor has it cited the legal standards applicable to an as-applied challenge in its briefing on appeal or attempted to apply those standards to the facts of this case.

## A. The challenged provisions of the IPA do not violate the First Amendment Right to Freedom of Speech.

Ridgeline argues that Idaho Code sections 48-303(3) and 48-304 (2020) violate the First Amendment's right to freedom of speech because they are facially overbroad and fail to satisfy either strict or intermediate scrutiny. Ridgeline argues that the statutes infringe upon the right to freedom of speech because they prevent healthcare providers and facilities from communicating adverse information about a patient's debt to consumer reporting bureaus until they ensure the IPA's requirements have been satisfied.

The First Amendment of the United States Constitution prevents the government from making laws that infringe, prohibit or abridge the freedom of speech. U.S. Const. amend. I. The guarantees of the First Amendment apply to the states through the Fourteenth Amendment. *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 749 n.1 (1976). Protected speech is that which is a "[p]urely factual matter of public interest[.]" *Id.* at 762. The right to freedom of speech, however, is not absolute and does not protect all types of speech. *E.g.,*

6

*Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969) (inciting imminent lawless action unprotected); *Counterman v. Colorado*, 600 U.S. 66, 72 (2023) (true threats are not protected speech); *Miller v. California*, 413 U.S. 15, 23 (1973) (obscene materials are not protected speech); *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571–72 (1942) (Unprotected speech includes "the lewd and obscene, the profane, the libelous, and the insulting or 'fighting' words[.]").

The First Amendment also affords less protection to commercial speech than pure speech. *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 562–63 (1980). While content-based regulations on noncommercial speech are ordinarily subject to strict scrutiny review, *Barr v. American Ass'n of Political Consultants, Inc.*, 591 U.S. 610, 618 (2020), regulations aimed at commercial speech are only subject to intermediate scrutiny, *see Central Hudson*, 447 U.S. at 563–66. Regulations on commercial speech also cannot be challenged as facially overbroad. *Bd. of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 481 (1989). Commercial speech refers to an "expression related solely to the economic interest of the speaker and its audience[,]" *Central Hudson*, 447 U.S. at 561, or "speech that does no more than propose a commercial transaction," *United States v. United Foods, Inc.*, 533 U.S. 405, 409 (2001).

The magistrate court concluded that the speech regulated by Idaho Code sections 48-303(3)(b) and 48-304 (2020) was commercial speech; therefore, it was subject to intermediate scrutiny under *Central Hudson*. It concluded that intermediate scrutiny was satisfied because (1) reporting a debt to a consumer reporting bureau before complying with section 48-304 (2020) constituted false and misleading speech, (2) the State had a substantial interest in minimizing abusive debt collection practices, (3) the IPA directly advanced the State's interest by mitigating abusive debt collection practices and providing transparency and accuracy concerning medical debts, and (4) the IPA was not more extensive than necessary to serve these purposes. The district court agreed.

Ridgeline argues that the lower courts erred when they concluded the speech at issue was commercial speech. Citing the United States Supreme Court's decision in *Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60, 66–67 (1983), Ridgeline asserts that having an economic motivation for the speech is not enough to transform it into commercial speech. Rather, the speech is noncommercial because reporting information about a debt to a credit reporting bureau is not an advertisement or marketing, nor does it propose a commercial transaction.

While the exact limits of commercial speech are not clear, the Supreme Court has held that the classification of speech as commercial speech relies on common sense distinctions from other types of speech. *Zauderer v. Off. of Disciplinary Counsel of Sup. Ct. of Ohio*, 471 U.S. 626, 637 (1985). Speech that only invites a commercial relationship or commercial transaction is purely commercial speech. *Id.* (concluding that an attorney's advertisements to represent DUI defendants and users of an intrauterine device were purely commercial speech). When speech includes both purely commercial elements and noncommercial elements that address important public issues, the economic motivation of the speaker alone is not enough to convert it to commercial speech. *Bolger*, 463 U.S. at 67. However, the United States Supreme Court also held that "communications can 'constitute commercial speech notwithstanding the fact that they contain discussions of important public issues . . . . We have made clear that advertising which "links a product to a current public debate" is not thereby entitled to the constitutional protection afforded noncommercial speech.' " *Fox*, 492 U.S. at 475 (alteration in original) (quoting *Bolger*, 463 U.S. at 67–68). Further, speech that solicits activity that would result in a potential pecuniary gain is not commercial speech if the activity solicited is constitutionally protected. *See In re Primus*, 436 U.S. 412, 427–31, 432 (1978) (analyzing state action against an attorney who solicited clients on behalf of the ACLU and finding that litigation activity is itself protected so the solicitations were as well).

Applying these precedents in this case, we hold that a healthcare provider's reporting of adverse information about an unpaid debt to a credit reporting bureau constitutes commercial speech. Reporting adverse information about a patient's debt to a consumer reporting bureau does not implicate an issue of public concern. Rather, this speech is purely commercial because it predominantly, if not entirely, concerns the healthcare provider's economic interest stemming from a commercial transaction. And unlike the speech at issue in *In re Primus*, reporting adverse information about a patient's debt does not implicate constitutionally protected conduct. Further, the recipient of this speech, the consumer reporting agency, also has a purely economic motivation since its business is to compile economic information for purposes of its own commercial transactions. *See The New Commercial Speech and the Fair Credit Reporting Act*, 130 U. Pa. L. Rev. 131, 140 (1981). Similar to the relationships and transactions at issue in *Zauderer*, the nature of the relationship between the creditor reporting the debt and the recipient of the information is economic. For these reasons, we hold that a healthcare provider's communication of adverse

information about an unpaid debt to a credit reporting bureau is commercial speech. As such, the IPA provisions governing the reporting of that information to a credit reporting bureau are subject to intermediate scrutiny review.

Ridgeline argues that a healthcare provider's reporting of adverse information about an unpaid debt addresses the creditworthiness of the debtor, which is a matter of public concern. Relying on *Bolger*, Ridgeline asserts that because the speech contains both commercial elements and noncommercial elements that address an important public issue, the speaker's economic motivation is not enough to convert it to commercial speech. This argument is unpersuasive.

While an individual's creditworthiness may be of interest to other creditors with commercial interests in extending credit, we are not convinced that the individual's creditworthiness is an "important public issue." *See Bolger*, 463 U.S. at 67–68, 68 n.15. Information about an individual's creditworthiness is not available to the general public. *See The New Commercial Speech and the Fair Credit Reporting Act*, 130 U. Pa. L. Rev. at 155–56. Even if it was a public issue, any public interest is negligible compared to Ridgeline's predominantly commercial interest in the communication. Having determined that the IPA provisions at issue are subject to intermediate scrutiny review, we turn to the merits of Ridgeline's free speech arguments.

1.  *Ridgeline's overbreadth challenge is without merit because the overbreadth doctrine does not apply to regulations of commercial speech.*

Ridgeline first argues the IPA is a facially overbroad restriction on the First Amendment right to freedom of speech because healthcare creditors could be forever barred from reporting a patient's debt if they do not comply with section 48-304 (2020).

A challenger asserting that a statute is facially unconstitutional generally must establish that "no set of circumstances exist[] under which the law would be valid," or that the law "lacks a 'plainly legitimate sweep.' " *Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024) (first quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987); and then quoting *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008)). In the First Amendment context, however, the standard is lower. *Id.* To "provide breathing room for free expression," the challenger must only show that "a substantial number of the law's applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Id.* (alterations omitted) (first quoting *United States v. Hansen*, 599 U.S. 762, 769 (2023); and then quoting *Americans for Prosperity Found. v. Bonta*, 594 U.S. 595, 615 (2021)). In an overbreadth challenge, even laws with a "plainly legitimate sweep" may be struck down "if the law's unconstitutional applications substantially outweigh its

constitutional ones." *Id.* at 723–24. This is exactly the argument that Ridgeline makes here: that the constitutionally permissible applications of the challenged IPA provisions are substantially outweighed by their unconstitutional applications.

However, the overbreadth doctrine does not normally apply to regulations affecting commercial speech. *Fox*, 492 U.S. at 481. Ridgeline's only response to this point has been to argue that the speech at issue is not commercial speech. For the reasons previously discussed, that argument is unpersuasive, and we have held that the speech is commercial speech. As a result, the overbreadth doctrine is inapplicable here and we affirm the district court's decision affirming the magistrate court's decision dismissing Ridgeline's overbreadth challenge.

2. *Ridgeline has failed to establish that sections 48-303(3)(b) and 48-304 (2020) are otherwise facially unconstitutional.*

Ridgeline next argues sections 48-303(3)(b) and 48-304 (2020) are facially unconstitutional because they fail strict scrutiny review. Citing *Sorrell v. IMS Health Inc.*, 564 U.S. 552 (2011), Ridgeline asserts that, even if the challenged IPA provisions regulate commercial speech, they are content- and speaker-based restrictions and as such, are subject to strict scrutiny review. Ridgeline takes *Sorrell* out of context.

*Sorrell* actually held that regulations aimed at commerce, which only incidentally burden pure speech, are permissible under the First Amendment. 564 U.S. at 567. But where the regulation affects both commercial speech and pure speech, and the burden on pure speech is more than incidental, the regulation may be subject to heightened scrutiny. *Id. Sorrell* does not stand for the proposition that content- and speaker-based restrictions affecting commercial speech should be analyzed under strict scrutiny. *See id.* at 571. To the contrary, *Sorrell* indicates that a content-based restriction affecting commercial speech should be analyzed under the *Central Hudson* intermediate scrutiny standard. *Id.* at 572. Having concluded that the speech regulated here is commercial speech, intermediate scrutiny is the applicable level of review.

Finally, Ridgeline alternatively argues that, even sections 48-303(3)(b) and 48-304 (2020) are subject to intermediate scrutiny under *Central Hudson*, they still fail to withstand scrutiny. As previously discussed, in *Central Hudson*, the Supreme Court discussed that a lower level of scrutiny applies to regulations affecting commercial speech. 447 U.S. at 564–66. In *Central Hudson*, the Supreme Court explained that a lower standard applies because commercial speech is afforded less protection under the First Amendment. *Id.* As a result, the government may regulate commercial speech if it has a substantial interest, and the regulation is proportional to that interest.

10

*Id.* at 564. This has since been referred to as an "intermediate scrutiny" level of review. *Fla. Bar v. Went For It, Inc.*, 515 U.S. 618, 623 (1995) ("[W]e engage in 'intermediate' scrutiny of restrictions on commercial speech, analyzing them under the framework set forth in [*Central Hudson*].").

This intermediate level of scrutiny, also referred to as the *Central Hudson* test, consists of a four-prong inquiry: (1) the commercial speech must involve lawful activity and not be misleading, (2) the asserted government interest must be substantial, (3) the regulation must directly advance that interest, and (4) the regulation must be no more extensive than necessary. *Id.* at 566. The first prong is a threshold inquiry, designed to determine whether the regulated speech is even entitled to First Amendment protection. *Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 367 (2002). If the speech concerns lawful activity and is not misleading, then it is entitled to protection, and we move on to the next three prongs to determine whether the particular commercial speech regulation is constitutionally permissible. *Id.* The final prong does not require the regulation to be narrowly tailored, but instead only that it be a reasonable fit to accomplish the legislature's substantial goal. *Fox*, 492 U.S. at 480.

The magistrate court determined that the IPA satisfied the *Central Hudson* inquiry for two reasons. First, it determined that the challenged statute failed the first prong of the inquiry because reporting a patient's debt to a credit reporting bureau before ensuring compliance with the IPA constituted false and misleading speech, which is not protected by the First Amendment.

Second, the magistrate court concluded that, even if the commercial speech was lawful, the challenged statute satisfied the last three prongs of the *Central Hudson* inquiry. In analyzing the last three prongs, the magistrate court concluded that the State has a substantial interest in protecting Idaho citizens from unfair medical billing practices and excessive collection fees associated with collecting medical debt. It concluded that the statute directly advanced the State's substantial interest because it "eliminat[ed] the risks associated with false or pre-mature reporting . . . ." Finally, it reasoned that the statute is no more extensive than necessary because it does not permanently bar a healthcare creditor from communicating information about a debt to a credit reporting bureau. On intermediate appellate review, the district court affirmed the magistrate court's decision on all points.

Ridgeline asserts that the magistrate court's analysis under *Central Hudson* was erroneous for three reasons. First, Ridgeline argues reporting debt information to consumer reporting bureaus

11

is not false or misleading speech because the patient still owes the debt regardless of whether the requirements in section 48-304 (2020) are met. Second, assuming the State has a substantial interest, Ridgeline contends the challenged provision of the IPA does not directly serve the State's purpose because imposing pre-conditions on debt reporting does not prevent excessive attorney fees or litigation for the debt. Finally, Ridgeline argues the challenged statute is more extensive than necessary to serve those purposes because a healthcare creditor is required to provide notice to patients who already have notice of their debt by other means.

We hold that the IPA satisfies all four prongs of the *Central Hudson* inquiry, thus satisfying intermediate scrutiny. Beginning with *Central Hudson*'s first prong, we agree with Ridgeline that the reporting of accurate information about a valid debt to a credit reporting agency is a lawful activity and is not misleading. Neither Lyon nor the State assert that the commercial speech at issue is unlawful or misleading. The magistrate court concluded that a valid implied-in-fact contract existed concerning the debt. The communication of truthful information about an unpaid debt is a lawful activity. The commercial speech at issue satisfies the first prong of the *Central Hudson* inquiry and is therefore entitled to commercial protection.

The magistrate court's conclusion to the contrary misinterpreted *Central Hudson*'s "lawful activity" language. Ridgeline's argument challenged the legality of certain preconditions imposed by the IPA. The magistrate court concluded the preconditions were not subject to review because failure to satisfy the preconditions rendered the speech unlawful. The magistrate court erred because the first prong of the *Central Hudson* inquiry concerns the legality of the subject matter of the commercial speech, not whether the challenged regulation renders the speech unlawful. *See Thompson*, 535 U.S. at 367–68.

We know this is the case because *Central Hudson* concerned the review of a state law that prohibited commercial speech promoting the use of electricity. 447 U.S. at 558–59. The Supreme Court concluded the commercial speech at issue concerned lawful activity and was not misleading, despite the fact that the challenged regulation made the speech unlawful. *See id.* at 563–71. To read the first *Central Hudson* prong as the magistrate court did would effectively render *Central Hudson* a nullity because a court could never examine the legality of a regulation that rendered commercial speech unlawful. Although the magistrate court erred in concluding that the challenged speech failed the first prong of the *Central Hudson* inquiry, the error does not mandate

12

reversal because we agree with its analysis that the challenged IPA provision satisfies the last three prongs of the *Central Hudson* inquiry.

Advancing to *Central Hudson*'s second prong, section 48-302 (2020) discusses the legislative intent for the statute. It states that the IPA governs "the fair collection of debts owed to health care providers" and reflects an intent to combat abusive debt collections practices for medical bills that patients were unaware of, and which were billed by healthcare providers they do not recognize. I.C. § 48-302 (2020). Section 48-302 (2020) also discusses concerns with excessive attorney fees in these collection actions. We conclude the legislature's stated intent for adopting the IPA evidences a substantial government interest in protecting patients from unfair and costly collection actions seeking to recover alleged medical debts.

On *Central Hudson*'s third prong, we conclude that sections 48-303(3)(b) and 48-304 (2020) directly advance the State's substantial interest. By requiring that patients receive notice of medical debts before they are reported to a consumer reporting bureau, the IPA gives patients time to contest the validity of a debt or pay it before incurring substantial fees or suffering unwarranted damage to their credit.

Turning to the last prong of *Central Hudson*, we conclude that the IPA is a reasonable fit to serve the State's purpose. Reporting inaccurate information about a debt, seeking to collect an invalid debt, or failing to permit patients an opportunity to pay a debt in advance of commencing extraordinary collection activities can have negative and adverse effects on a patient. The IPA's requirements to provide patients with certain notices and wait a specified timeframe before commencing extraordinary collection activities to give the patient time to pay the debt or make payment arrangements are reasonable efforts to serve the State's purpose to protect patients from abuses of the medical debt collection process. The IPA thus satisfies all four prongs of the *Central Hudson* intermediate scrutiny inquiry. We affirm the district court's decision affirming the magistrate court's decision dismissing Ridgeline's First Amendment freedom of speech claim.

## B. The challenged provisions of the IPA do not violate the First Amendment's right to petition.

Ridgeline next challenges sections 48-303(3)(c) and 48-304 (2020), arguing that they unconstitutionally infringe on Ridgeline's First Amendment right to petition the government for relief. Ridgeline argues that litigation is a protected petitioning activity, and the IPA impermissibly burdens that right because it requires healthcare providers and facilities to ensure compliance with the IPA in order to recover their attorney fees and costs and avoid statutory damages.

13

The First Amendment of the United States Constitution prohibits the government from making laws that infringe, prohibit, or abridge the freedom to petition the government for redress of grievances. U.S. Const. amend. I. The Supreme Court has interpreted the First Amendment's right to petition the government to encompass a right of access to courts. *Bill Johnson's Rests., Inc. v. NLRB*, 461 U.S. 731, 741 (1983); *Christopher v. Harbury*, 536 U.S. 403, 415 n.12 (2002). The right of access to courts is also rooted in the Fourteenth Amendment's Equal Protection and Due Process Clauses. *Harbury*, 536 U.S. at 415 n.12. This right protects the filing of a well-founded lawsuit based on an underlying cause of action distinct from the access to court claim itself. *Bill Johnson's Rests., Inc.*, 461 U.S. at 743–44; *Harbury*, 536 U.S. at 415.

Here, the magistrate court determined the challenged IPA provisions did not violate the First Amendment's right to petition for two reasons. First, because the IPA only modifies the cause of action by imposing reasonable requirements to file a medical debt lawsuit, this modification does not infringe upon the right to petition. Second, because the IPA only regulates commercial interests, it is subject to rational basis scrutiny under *Gomersall v. St. Luke's Regional Medical Center, Ltd.*, 168 Idaho 308, 483 P.3d 365 (2021). The magistrate court determined the IPA satisfied rational basis scrutiny because the State has a legitimate interest in regulating medical debt collection practices and litigation, and giving patients notice and time to settle those debts rationally serves those interests. The district court additionally determined that, even if the IPA was subject to strict scrutiny, it satisfied that level of review because the government's interest was compelling and the restrictions were narrowly tailored since the IPA does not prohibit filing a lawsuit but only imposes reasonable prerequisites to doing so.

Ridgeline asserts that the right to petition is a fundamental right, and burdens on fundamental rights automatically trigger strict scrutiny review, citing to *Oregon Natural Resources Council v. Mohola*, 944 F.2d 531, 533 (9th Cir. 1991). The IPA, Ridgeline asserts, fails strict scrutiny because it is not narrowly tailored since its protections extend to patients who know they have a debt and therefore do not need notice from healthcare creditors. Ridgeline also argues that the district court erred in applying *Gomersall*. Ridgeline contends that case is not applicable because it dealt with the right of access to courts under the Fourteenth Amendment, whereas here, Ridgeline asserts a different right under the First Amendment.

We find no legal support for Ridgeline's argument that the First Amendment contains a right protecting access to courts that differs from the right protected by the Fourteenth Amendment.

Ridgeline disclaims that it is making an "access to courts" claim, but its argument contends that the IPA infringes upon its constitutional right to file a lawsuit without having to first satisfy the IPA's requirements. Regardless of what language Ridgeline uses to describe it, that is an access to courts claim.

It is well established that the Fourteenth Amendment's right of access to courts is one and the same as the First Amendment's right to petition the courts. *See Harbury*, 536 U.S. at 415 n.12; *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972) (holding the Fourteenth Amendment right of access to the courts is also an aspect of the First Amendment right to petition); *see also Bill Johnson's Rests., Inc.*, 461 U.S. at 741 (relying on *Cal. Motor Transp.*, 404 U.S. at 510); *BE & K Constr. Co. v. NLRB*, 536 U.S. 516, 525 (2002) (same); *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 387 (2011) (same). In that vein, the Supreme Court has recognized two categories of access to court claims. *Harbury*, 536 U.S. at 412–13. The first concerns a claim challenging government action that will prevent a litigant from bringing a cause of action in the future. *Id.* at 413. The second concerns a claim that a cause of action previously available to the litigant was lost because of government action. *Id.* at 413–14.

Ridgeline's allegations fit into the first category of access to courts claims. In order to establish that its right to petition was violated because it was prevented from bringing a cause of action in the future, Ridgeline is required to show what underlying cause of action was or is likely to be lost. *Id.* at 415; *see also Lewis v. Casey*, 518 U.S. 343, 353 n.4 (1996). This is because it is the loss, rejection, or impediment to legal claims that constitutes a denial of access to the courts. *Harbury*, 536 U.S. at 415; *Lewis*, 518 U.S. at 353 n.4.

Here, Ridgeline cannot show an underlying cause of action was lost because it concedes that the IPA does not prevent a healthcare creditor from bringing suit to collect a debt. Rather, failure to comply with the IPA's requirements prevents the creditor from recovering its attorney fees and costs associated with the lawsuit and subjects it to statutory penalties. Because the IPA does not prevent Ridgeline from seeking judicial relief to collect its debt, it has failed to establish that the IPA unconstitutionally infringes upon its right to petition.

This conclusion is further supported by decisions of the Supreme Court and this Court upholding other statutes imposing conditions on the filing of causes of action. The Supreme Court rejected the argument that a "one-year durational residency requirement" prior to filing for divorce "den[ies] access to divorce courts." *Sosna v. Iowa*, 419 U.S. 393, 410 (1975) ("[T]he gravamen of

appellant['s] claim is not total deprivation . . . , but only delay."). This Court rejected an argument that the Idaho Torts Claims Act violated the United States Constitution because it required a claimant to provide notice to the Secretary of State within 120 days of the claim arising—or else be unable to pursue the claim entirely. *Newlan v. State*, 96 Idaho 711, 535 P.2d 1348 (1975). We upheld the "procedural requirement[ ]" associated with the cause of action because it granted "all persons . . . the ability to sue the state . . . insolong as they conform to the precedent statutory conditions." *Id.* at 713–14, 535 P.2d at 1350–51 (concluding that access to courts was not infringed and so, only rational basis applied). Similar to the prerequisites at issue in *Sosna* and *Newlan*, the IPA's requirements are constitutional because they do not amount to total deprivation of the right of access to courts. We affirm the district court's decision affirming the magistrate court's decision dismissing Ridgeline's petitioning claim.

## C. The challenged provisions of the IPA do not violate a purported First Amendment right to engage in pre-petitioning activity.

Ridgeline next argues that the IPA violates a purported First Amendment right to engage in pre-petitioning activity because sections 48-303(3)(a) and 48-304 (2020) prevent healthcare providers and facilities from "employing" a third party to conduct what it calls "pre-litigation conduct," such as sending demand letters, hiring and recommending attorneys, and advising someone to get legal advice. Ridgeline has again failed to establish that the IPA unconstitutionally infringes on this purported right.

Neither this Court nor the Supreme Court has expressly recognized a separate First Amendment right to engage in pre-petitioning activity. In support of its argument, Ridgeline cites a Ninth Circuit case, *Sosa v. DIRECTV, Inc.*, 437 F.3d 923 (9th Cir. 2006). *Sosa* recognized that the First Amendment's right to petition included a right to engage in "conduct incidental to the prosecution of the suit," such as demand letters and invitations to settle. 437 P.3d at 935–36. We are not convinced that *Sosa* recognized an *additional right* under the First Amendment, as much as it recognized that the right to petition *encompassed activities* that were incidental to the prosecution of a suit. However, we need not definitively resolve that issue today because even if *Sosa* did recognize an additional right, the IPA does not unconstitutionally infringe upon it.

Ridgeline's pre-petitioning argument concerns sections 48-303(3)(a) and 48-304 (2020). Section 48-303(3)(a) (2020) defines an extraordinary collection action to include "selling, transferring, or assigning any amount of a patient's debt to any third-party, or otherwise authorizing any third-party to collect the debt in a name other than the name of the health care

16

provider." I.C. § 48-303(3)(a) (2020). Section 48-304 (2020) prohibits a medical creditor from engaging in that activity unless it has first ensured compliance with the IPA's requirements. The IPA does not prohibit the medical creditor from sending its own demand letters, hiring attorneys or obtaining legal advice. As a result, even if we were to recognize a separate First Amendment right to engage in pre-petitioning activity, Ridgeline has failed to demonstrate that sections 48-303(3) or 48-304 (2020) implicate or infringe upon the pre-petitioning activity discussed in *Sosa*. We therefore affirm the district court's decision affirming the magistrate court's decision dismissing Ridgeline's pre-petitioning activity claim.

**D. The challenged provisions of the IPA do not violate the Fourteenth Amendment's Equal Protection Clause.**

Ridgeline also asserts that the IPA violates the Equal Protection Clause because it creates a legislative classification that limits the fundamental First Amendment rights of healthcare providers and facilities. We again conclude that Ridgeline has failed to establish a constitutional violation.

"No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Fourteenth Amendment's Equal Protection Clause does not prevent a state from "treat[ing] different classes of persons in different ways." *Eisenstadt v. Baird*, 405 U.S. 438, 446–47 (1972). But it does prohibit legislation that affords different treatment to a class identified by a statute when that class is completely unrelated to the purpose of the statute. *Id.* at 447. Thus, all classifications created by statute must satisfy equal protection. *Lynn v. Kootenai Cnty. Fire Protective Dist. No. 1*, 97 Idaho 623, 625, 550 P.2d 126, 128 (1976). An equal protection analysis involves three steps: (1) identify the challenged classification, (2) identify the appropriate level of scrutiny, and (3) determine if that level of scrutiny has been satisfied. *Gomersall*, 168 Idaho at 318, 483 P.3d at 375. Rational basis scrutiny is to be applied when the statutory classification does not involve a fundamental right or a suspect class. *Lynn*, 97 Idaho at 625–26, 550 P.2d at 128–29; *United States v. Skrmetti*, 605 U.S. 495, 510 (2025) (Classifications based on "race, alienage, or national origin trigger strict scrutiny[.]"). A fundamental right is one that is explicitly or implicitly guaranteed by the United States Constitution. *Planned Parenthood Great Nw. v. State*, 171 Idaho 374, 411, 522 P.3d 1132, 1169 (2023).

Both lower courts concluded that healthcare creditors are not a suspect class and the IPA does not impermissibly limit a fundamental right so rational basis review applied. Ridgeline argues that conclusion was erroneous. While Ridgeline concedes that healthcare creditors do not

constitute a suspect class, it argues that strict scrutiny applies because the challenged IPA provisions infringe on the First Amendment's fundamental rights of freedom of speech and freedom to petition. As a result, Ridgeline's argument turns entirely on whether the IPA infringes upon a fundamental right.

For the reasons previously discussed, the IPA does not unconstitutionally infringe upon the right to freedom of speech or the right to petition. Accordingly, sections 48-303(3) and 48-304 (2020) are not subject to strict scrutiny review and the district court did not err in applying rational basis review. Ridgeline has not asserted that the challenged IPA provisions do not survive a rational basis level of review. We therefore affirm the district court's decision affirming the magistrate court's decision dismissing Ridgeline's equal protection claim.

## E. The challenged provisions of the IPA do not violate the Fourteenth Amendment's Procedural Due Process Clause.

Ridgeline argues that sections 48-303(3), 48-304, and 48-311 (2020) violate procedural due process because the IPA deprives healthcare providers and facilities of a protected liberty interest through procedures that are "constitutionally inadequate." Ridgeline asserts the liberty interest at issue is the First Amendment rights to freedom of speech and petition.

No "State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1. Procedural due process requires notice and an opportunity to be heard prior to depriving a party of a life, liberty, or property interest. *Doe I v. Doe (2024-23)* (*In re Doe II*), ___ Idaho ___, ___, 566 P.3d 409, 429–30 (2025).

Having concluded that Ridgeline failed to establish that the challenged provisions of the IPA violated either of the asserted First Amendment rights, Ridgeline has failed to establish an essential element of its claim—the deprivation of a constitutionally protected liberty interest. Therefore, we affirm the district court's decision affirming the magistrate court's decision dismissing Ridgeline's procedural due process claim.

## F. The challenged provisions of the IPA do not violate the Fourteenth Amendment's Substantive Due Process Clause.

Ridgeline also asserts that section 48-311 (2020) violates the Substantive Due Process Clause because the statutory damages imposed in that section are constitutionally unreasonable penalties that are disproportionate to the offense.

The Fourteenth Amendment of the United States Constitution limits the power of the states to assess penalties for violations of their laws. *St. Louis, I. M. & S. Ry. Co. v. Williams*, 251 U.S.

63, 66 (1919). However, states have wide discretion to assess penalties so long as the penalty is not "so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable." *Id.* at 66–67.

Here, section 48-311 (2020) provides for statutory damages for violations of the IPA. The damages are the greater of three times the amount of the actual damages, or $3,000. I.C. § 48-311(3) (2020). Ridgeline only argues that the $3,000 in damages are disproportionate, but it cites no evidence in the record to support its position. Given the State's asserted interest in protecting patients from abusive collection practices that can result in a variety of economic harms, including damage to one's credit and unnecessary and excessive attorney fees, we cannot conclude that a $3,000 penalty is "obviously unreasonable." Ridgeline's bare assertion to the contrary amounts to no more than a policy argument, which is more properly directed to the legislature. We affirm the district court's decision affirming the magistrate court's decision dismissing Ridgeline's substantive due process claim.

## G. Neither Ridgeline nor Lyon are entitled to attorney fees on appeal.

Ridgeline argues that it is entitled to attorney fees on appeal as the prevailing party under Idaho Appellate Rule 40 and Idaho Code section 12-120(3). That code section authorizes an award of attorney fees on appeal to a prevailing party in a civil action concerning a commercial transaction. I.C. § 12-120(3). Ridgeline, however, is not the prevailing party on appeal and therefore is not entitled to attorney fees.

Lyon asserts that he is entitled to attorney fees under Idaho Appellate Rules 40 and 41, and Idaho Code section 48-311 (2020). However, Lyon is also not entitled to attorney fees because section 48-311 (2020) is not a statutory basis to award fees on appeal. Section 48-311 (2020) provides that attorney fees can be awarded to the patient "[i]n any successful action to enforce the liability set forth in this section[.]" I.C. § 48-311(3) (2020). Because the subject of this appeal concerns the constitutionality of the IPA, we decline to award Lyon attorney fees under section 48-311 (2020).

## V. CONCLUSION

For the reasons discussed herein, we affirm the district court's intermediate appellate decision affirming the magistrate court's decision dismissing Ridgeline's complaint.

Chief Justice BEVAN, and Justices BRODY, MOELLER, and MEYER CONCUR.

19